FORM 104 (10/06)

<table>
<tr><td colspan="2"><b>ADVERSARY PROCEEDING COVER SHEET</b><br>(Instructions on Reverse)</td><td><b>ADVERSARY PROCEEDING NUMBER</b><br>(Court Use Only)</td></tr>
<tr><td colspan="2"><b>PLAINTIFFS</b><br>DHC Realty, LLC, et. al.</td><td><b>DEFENDANTS</b><br>Armando Armendariz, et al.</td></tr>
<tr><td colspan="2"><b>ATTORNEYS</b> (Firm Name, Address, and Telephone No.)<br>Corey W. Haugland<br>James Haugland, P.C. (915) 532-3911<br>609 Montana Ave, El Paso, TX 79902</td><td><b>ATTORNEYS</b> (If Known)<br>Sidney J. Diamond<br>3800 N. Mesa, Ste. C-4<br>El Paso TX 79902</td></tr>
<tr><td colspan="2"><b>PARTY</b> (Check One Box Only)<br>☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee</td><td><b>PARTY</b> (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☑ Other<br>☐ Trustee</td></tr>
</table>

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Avoidance of Fraudulent Transfers under 11 USC 544, 548 & 550, Avoidance of Post-Petition Transactions under 11 USC 549, Texas Theft Liability Act (Tex. Civ. Prac. + Rem. Code 134.001 et seq.), Money Had + Received, Conversion, Breach of Fiduciary Duty, Fraud, Conspiracy, + Tortious Interference w/ Prospective Relations, Declaratory Judgment under 28 USC 2201

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property** | **FRBP 7001(6) – Dischargeability (continued)** |
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☑ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☑ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐ 65-Dischargeability - other |
| ☑ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71-Injunctive relief – reinstatement of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief – other |
| | **FRBP 7001(8) Subordination of Claim or Interest** |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | ☐ 81-Subordination of claim or interest |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | |
| | **FRBP 7001(9) Declaratory Judgment** |
| **FRBP 7001(5) – Revocation of Confirmation** | ☒ 91-Declaratory judgment |
| ☐ 51-Revocation of confirmation | |
| | **FRBP 7001(10) Determination of Removed Action** |
| **FRBP 7001(6) – Dischargeability** | ☐ 01-Determination of removed claim or cause |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | **Other** |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq. |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| **(continued next column)** | |

| | |
|---|---|
| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 400,000.00 |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>DHC Realty, LLC | BANKRUPTCY CASE NO.<br>11-30977 - Hcm | |
| DISTRICT IN WHICH CASE IS PENDING<br>WESTERN | DIVISION OFFICE<br>EL PASO | NAME OF JUDGE<br>MOTT |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>May 23, 2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>COREY W. HAUGLAND | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| DHC REALTY, LLC, | § | Case No.11-30977-HCM |
| | § | |
| Debtor. | § | |
| | § | |
| _____ | § | |
| | § | |
| DHC REALTY, LLC, CHOWAIKI | § | |
| HOLDINGS, LLC, EL PASO DHC | § | |
| ENTERPRISES, LLC, EL PASO DHC | § | |
| ENTERPRISES FAR EAST, LLC, | § | |
| EL PASO DHC ENTERPRISES | § | |
| WEST, LLC, and DAVID CHOWAIKI, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. _____ |
| | § | |
| ARMANDO ARMENDARIZ, | § | |
| YVETTE ARMENDARIZ, and | § | |
| HECTOR ARMENDARIZ, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

COME NOW, DHC REALTY, LLC, CHOWAIKI HOLDINGS, LLC, EL PASO DHC ENTERPRISES, LLC, EL PASO DHC ENTERPRISES FAR EAST, LLC, EL PASO DHC ENTERPRISES WEST LLC, and DAVID CHOWAIKI, Plaintiffs herein, complaining of ARMANDO ARMENDARIZ, YVETTE ARMENDARIZ, and HECTOR ARMENDARIZ, and for cause of action would respectfully show the Court the following:

422474.1                                    Page 1

## I. PARTIES

1.  Debtor and Plaintiff DHC REALTY, LLC (hereinafter "DHC Realty" or "Debtor") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

2.  Plaintiff CHOWAIKI HOLDINGS, LLC (hereinafter "Chowaiki Holdings") is a limited liability company that is organized and existing under the laws of the State of Delaware with its principal place of business in El Paso County, Texas.

3.  Plaintiff EL PASO DHC ENTERPRISES, LLC (hereinafter "DHC East") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

4.  Plaintiff EL PASO DHC ENTERPRISES FAR EAST, LLC (hereinafter "DHC Far East") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

5.  Plaintiff EL PASO DHC ENTERPRISES WEST LLC (hereinafter "DHC West") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

6.  Plaintiff DAVID CHOWAIKI is an individual who is a resident of El Paso County, Texas.

7.  Defendant ARMANDO ARMENDARIZ (hereinafter "Armando") is an individual resident of El Paso County, Texas who may be served with process at his usual place of abode at 11316 Lindenwood Avenue, El Paso, El Paso County, Texas 79936, or wherever else he may be found.

8.  Defendant YVETTE ARMENDARIZ (hereinafter "Yvette") is an individual resident of El

Paso County, Texas who may be served with process at her usual place of abode 11316 Lindenwood Avenue, El Paso, El Paso County, Texas 79936, or wherever else she may be found.

9.    Defendant HECTOR ARMENDARIZ (hereinafter "Hector") is an individual resident of El Paso County, Texas who may be served with process at his usual place of abode at 14201 Desert Sage, Horizon City, El Paso County, Texas 79928, or wherever else he may be found.

## II. JURISDICTION & VENUE

10.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and 11 U.S.C. §548 and 549. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (H) (K) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1409.

11.    As set forth below, this matter involves a scheme by the Defendants to steal and embezzle hundreds of thousands of dollars from the Debtor, DHC East, DHC West, and DHC Far East. Part of this scheme involved the theft of revenue from vending machines owned by the Debtor and the theft of equipment owned by the Debtor, both pre and post-petition. Debtor's suit seeks, *inter alia*, the recovery of these fraudulent and post-petition transfers which directly impact the administration of the estate. Debtor's suit also seeks a determination of the validity, extent and priority of the debt that Yvette has previously asserted against Debtor.

12.    The claims of the non-Debtor Plaintiffs are inseparably intertwined with the claims of the Debtor. As set forth below, Yvette has previously made demand on David Chowaiki, DHC East, DHC West, and DHC Far East as well as Debtor for the payment of the alleged loan so a determination of liability is impossible without each alleged obligor. Moreover, as

Plaintiffs have asserted that the money Yvette used to make the loan was stolen from the Debtor, DHC East, DHC West, and DHC Far East, these parties' claims are intertwined and should be tried together.

13.  With regard to their other claims, Plaintiffs have asserted that Defendants engaged in a broad based scheme to embezzle and steal from the Restaurants without regard to the whether the theft was from the Debtor, DHC East, DHC West, or DHC Far East, and indeed, there is no way to segregate the activities of the Defendants.  Again, the claims of the Plaintiffs are inseparable and should be tried together.

14.  The Defendants have consented to bankruptcy court jurisdiction over the claims asserted herein.

### III.  FACTS

15.  Plaintiff Chowaiki Holdings is owned by Plaintiff David Chowaiki, his brother Hilel Chowaiki (50% – 50%).  Chowaiki Holdings, through Plaintiffs DHC East, DHC Far East, and DHC West, own and operate three Fuddrucker's® franchise restaurants located at: (1) 7942 Gateway East, El Paso County, Texas (DHC East); (2)1887 N. Zaragosa, El Paso County, Texas (DHC Far East); and (3) 5030 N. Desert, El Paso County, Texas (DHC West) (hereinafter the "Restaurants").

16.  Plaintiff and Debtor DHC Realty owns and manages the real properties upon which the Restaurants are located, owns the fixtures and equipment inside the Restaurants, including the vending machines, and owns several vehicles utilized by the Restaurants to provide catering.  David and Hilel Chowaiki (the "Chowaikis") oversee the general operations of all of these entities.

17.     In February 2006, DHC East hired Armando as one of several new managers for the

Fuddrucker's operation in El Paso, Texas, which consisted of the DHC East and the under

construction DHC West.  Subsequently, Armando became general manager for DHC West;

and, he subsequently became director of operations for DHC East and DHC West.  After

DHC Far East became operational, it too became subject to Armando's management as

Director of Operations.  Three months after DHC Far East became operational, Chowaiki

Holdings was created.  Armando later became an employee of Chowaiki Holdings as

Director of Operations over all three restaurants.  At all times thereafter, Armando acted as

an agent for DHC East, DHC Far East, DHC West, DHC Realty and Chowaiki Holdings.

Armando was hired for this position based upon his representations, *inter alia*, that he would:

    a.    ensure all of the employees and managers perform their job responsibilities and meet expectations in all areas of their job descriptions;

    b.    hire high quality people;

    c.    continuously improve the morals of all employees;

    d.    provide appropriate and effective counseling and discipline for employees and maintain proper documentation;

    e.    maximize financial performance and profits of the Restaurants including meeting food cost budgets, meeting labor budgets and meeting operating costs;

    f.    ensure business and personal practices are within the law and consistent with company policies and procedures;

    g.    be a role model and set a positive example for the employees;

    h.    enforce all company policies;

    i.    follow procedures to maintain the safety and security of all employees and company assets;

j.  act with a high degree of integrity and treat all employees with honesty, respect, and dignity.

18.  Chowaiki Holdings trusted Armando and after he was hired the Chowaikis even loaned him $5,000 to help him and his wife Yvette buy a house.

19.  Thereafter, Armando hired his wife Yvette to handle payroll for the Restaurants and his brother Hector to manage one of the Fuddrucker's restaurants (initially the Yarborough location (DHC East) and later the Westside location (DHC West)). Both Yvette and Hector were employed by DHC Far East (as were all other Restaurant employees regardless of the location at which they worked).

20.  Armando, along with Yvette and Hector, engaged in a series of activities to embezzle monies from the Plaintiffs, steal inventory and other assets from the Restaurants, use the Restaurants to run a criminal enterprise, and use the Restaurants and their positions therein for personal gain. These activities began pre-petition but upon information and belief some activities continued post-petition – until the Defendants were fired in April 2012. These activities include, but are not limited to, the actions set forth below.

21.  Armando hired Danny Armendariz (hereinafter "Danny"), who had fathered a child with Yvette's sister, to manage the Gateway East restaurant despite the fact that Danny had no experience in the restaurant business and did not know how to cook or even how to run a cash register. Danny was hired because his mortgage company had failed, he had gone bankrupt, and he could not pay child support to Yvette's sister. Specifically, Armando hired the unqualified Danny in a management position to ensure that Yvette's sister would receive child support payments.

22.     In addition to her payroll duties, Yvette was also put in charge of collecting money from the vending machines located within the Restaurants for the Debtor. The Debtor later discovered that the meters on the vending machines had been removed by, or at the direction of, one or more of the Defendants, which prevented any mechanical count of revenue from the machines. Upon information and belief, an unknown amount of revenue from vending was stolen from DHC Realty by Yvette and/or the other Defendants for their personal use. Upon further information and belief, this theft continued after the Debtor filed for bankruptcy protection.

23.     Hector repeatedly falsified his time sheets to collect pay for time spent at his home. Armando consistently lied about the amount of time he was devoting to the business. Armando represented that he was working 100 hours per week. Other employees have represented that Armando was rarely seen at the Restaurants. The El Paso County Health Department's Food Establishment Inspection scores for the Restaurants under Armando's supervision were consistently failing. Danny likewise shirked his management responsibilities by failing to work sufficient hours or to properly supervise employees. The sloth and lack of diligence characterizing the management by Hector, Armando, and Danny resulted in filthy restaurants which turned off the customers.

24.     While acting as director of operations for the Restaurants, Armando and Yvette ran a side business selling vehicles and providing financing for them[1]. Armando and Yvette sold vehicles to employees of the Restaurants and/or hired people to work in the Restaurants to whom he had sold vehicles. Additionally, Armando and/or Yvette would provide short term

---

[1] Upon information and belief, neither Armando nor Yvette were licensed to engage in this activity.

loans to employees and charge them usurious interest rates. Thereafter, Armando and Yvette would ensure that these employees could make their payments to him by paying them for full shifts and paying them overtime regardless of whether such services were warranted. Upon information and belief, Armando and Yvette ensured that such employees were paid whether or not the employees actually provided services to the Restaurants. Armando and Yvette tailored their vehicle financing contracts so that the payments would be due the day after the employees were paid by DHC Far East.

25.     Similarly, with the money that Armando and Yvette had embezzled from Plaintiffs, they were able to buy houses which they rented out to Restaurant employees, utilizing the same payment scheme set out above to ensure that such employees were able to afford the rent and that it would be paid timely.

26.     The employees who owed Armando and/or Yvette money were under their protection and were not allowed to be fired. One such employee was Melanie Hann. During her employment Ms. Hann stole money from the restaurant at which she worked by pocketing money from individual sales and having the meals entered on the restaurant's books as complimentary. Through this and other schemes Ms. Hann (and Others) was able to embezzle between $19,000 and $50,000 from the restaurant. When a customer eventually turned her in to Armando, he ignored the customer and, in fact, promoted Ms. Hann. When the Chowaikis noticed that Ms. Hann's store was reporting $13,000 in discounts on $70,000 of sales, they called Armando to investigate. Armando initially told the Chowaikis that it was a "glitch in the computer system." Despite the evidence against her, Armando fiercely defended Ms. Hann and argued against firing her. It was later discovered by Plaintiffs that

Ms. Hann was both a tenant of Armando and owed him money for the purchase of a vehicle.

27.    In addition to these schemes, during his employment, Armando routinely used Restraurant funds to purchase food and restaurant equipment which he kept and, upon information and belief, sold to other entities.

28.    Armando, Yvette and Hector blatantly took significant quantities of prepared and unprepared food from the Restaurants for their personal use without paying or accounting for same.

29.    Additionally, Armando sold coupons and gift cards to customers with unauthorized discounts, often keeping 100% of the proceeds for himself. Also, Armando used restaurant food, coupons and discounts to pay people who had provided personal services to him and/or his family.

30.    Armando also stole money from yearly special events at which the Restaurants sold food, such as Amigo Airshow, KLAQ BBQ, and the El Paso Street Festival. For these special events, Armando monitored the events and prohibited all employees from counting the money or ringing up sales (despite the fact that Fuddruckers had manual cash registers which would have been used). Armando wouldn't let anyone else count or deposit the money; he insisted that all money be turned over to him and he would tell the storeswhat sales to ring up or report from the events at a later date. Although the actual sales at each of these events were estimated to be tremendous, Armando reported nominal sales for each event for the five years he was employed by the Restaurants. Armando also [prevented the managers from keeping proper inventory for these sales and events, going so far as changing inventory records at the stores.

31.    Armando, without authority and without any disclosure to his superiors, gave away large

quantities of food owned by the Restaurants, including 4,000 meals at the Amigo Airshow in both 2010 and 2011.   Armando, for no apparent reason other than to damage the Plaintiffs' business operations, consistently provided below cost pricing to catering customers.  The catering operations were controlled by Armando and used in every way imaginable by him to steal from DHC East, DHC West, DHC Far East and DHC Realty.

32.   Concerned about the high food costs, which were running at about 40% of total operating costs at the Restaurants, the Chowaikis asked Armando to check with Fuddruckers Corporate to determine what the appropriate food costs should be.  Armando told the Chowaikis that the corporate representative of Fuddruckers had told him that food costs at most stores were running at about 36-37% of total operating costs.  The Chowaikis later discovered from Fuddruckers Corporate that the average food costs run at about 29.5%, and that the worst store ever (before Armando started overseeing the El Paso Fuddruckers) had food costs approximately 32% of total operating costs.  After Armando's access to the Restaurants was restricted, food costs dropped drastically.  Food costs were under 30% of total operating costs at all three Restaurants the first full month _after_ Armando was out.

33.   On one occasion, Armando notified the Chowaikis that the Restaurants needed more catering trucks.  Armando stated that he had located some vehicles that he could get at cost as long as they were paid for in cash.  Armando requested and was given the authority to purchase the vehicles for DHC Realty.  The Plaintiffs later discovered that the vehicles were titled in Armando's name rather than DHC Realty and that they had actually been marked up for sale.  Upon information and belief, Armando had the price of the vehicles marked up and pocketed the difference.  Moreover, although Armando was supposed to maintain all of the vehicles

422474.1                               Page 10

utilized by the Restaurants, he failed to do so and one of the vehicles' engine seized because its oil was not changed.

34.     Upon information and belief, Armando usurped corporate opportunities by directing catering requests away from the Restaurants and into a different catering business from whom he received compensation.

35.     Although Armando was supposed to be present at the Restaurants in his capacity as general manager, he was rarely present at these facilities, except to collect from his tenants, his borrowers, and the buyers of cars.  As a result, Armando failed to properly maintain the Restaurant equipment and/or facilities leading to increased costs for the Restaurants and DHC Realty.  This also hurt the restaurants' image and cost them customers.

36.     While Armando, Yvette and Hector were utilizing these schemes to defraud the Plaintiffs, they told employees not to ever talk to the Chowaikis and that anyone who did would be fired.  Moreover, any employee who started asking too many questions about the activities of Armando, Yvette and Hector was fired.

37.     By 2010 the Plaintiffs were in financial trouble as a result of the Defendants' activities. Although just a few years prior Armando and Yvette needed to borrow $5,000 to purchase a home, their schemes had now put them in a position to lend thousands of dollars to the Restaurants.  To this end, on March 29, 2010 and June 7, 2010, Yvette loaned $100,000 to the Restaurants via three checks made out to David Chowaiki.

38.     On or about May 23, 2011 (hereinafter the "Petition Date"), DHC Realty filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Western District of Texas, El Paso Division.  Since the Petition Date, DHC Realty has continued to operate as a debtor-in-possession.  In its effort to reorganize, DHC Realty began evaluating

selling or closing some of the Restaurants.   In January of 2012, Armando made an unsolicited offer to buy the Zaragosa restaurant.

39.    Thereafter, Plaintiffs discovered many of the Defendants' embezzlement schemes and terminated each of the Defendants, if they didn't at first resign as a ersult of Plaintiffs' investigation into their misconduct.   The month after the Defendants were no longer employed, food costs were under 30% at all three or the Restaurants, employment costs had been reduced considerably at each of the Restaurants, vending revenues from all three Restaurants had increased dramatically, as had total revenues.   The extent of Defendants' schemes is still being investigated and the total amount of damages incurred by the Plaintiffs is not known, but upon information and belief is in excess of $400,000.00.

40.    On or about April 18, 2012, Yvette sent a demand letter to David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty demanding immediate payment on the $100,000 loan. Several days later, Yvette sent another letter withdrawing her demand against DHC Realty because DHC Realty was in bankruptcy.

### IV.  COUNT 1 – Avoidance of Fraudulent Transfer

41.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

42.    Debtor DHC Realty pleads for the avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548 and 550.

43.    As set forth above, within four (4) years before the Petition Date in this case, DHC Realty transferred money, equipment and other assets to one or more of the Defendants.

44.    As DHC Realty received no compensation for the theft of its assets, it received less than a reasonably equivalent value in exchange for such transfers.

45.    DHC Realty either became insolvent as a result of these transfers, was about to engage in

business or a transaction for which any property remaining was an unreasonably small capital, intended to incur debts that would be beyond the debtor's ability to pay as such debts matured; or made the transfers to or for the benefit of an insider (Armando) and not in the ordinary course of business.

46.   DHC Realty seeks the avoidance of these transfers and the recovery of the value of these fraudulent transfers in an amount to be determined by this Court pursuant to 11 U.S.C. §§ 544, 548 and 550.

## V.  COUNT 2 – Avoidance of Post-Petition Transactions Under 11 U.S.C. §549

47.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

48.   Debtor DHC Realty pleads for the avoidance and recovery of post-petition transactions pursuant to 11 U.S.C. §§ 549 and 550.

49.   As set forth above, after the Petition Date, DHC Realty transferred money, equipment and other assets to one or more of the Defendants.

50.   These transfers were the result of theft by one or more of the Defendants and were therefore not authorized by the Bankruptcy Code or this Court.

51.   DHC Realty seeks the avoidance of these transfers and the recovery of the value of these transfers in an amount to be determined by this Court pursuant to 11 U.S.C. §§ 549 and 550.

## VI.  COUNT 3 – Violation of Texas Theft Liability Act

52.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

53.   Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for violation of the Texas Theft Liability Act, Texas Civil Practice and Remedies Code §§ 134.001, *et seq.*

54.   As set forth above, DHC East, DHC West, DHC Far East and DHC Realty had possessory

rights to their food, inventory, equipment, and money.

55.     The Defendants unlawfully appropriated this property by taking it without the effective consent of DHC East, DHC West, DHC Far East or DHC Realty.

56.     The Defendants appropriated the property with the intent to deprive DHC East, DHC West, DHC Far East and DHC Realty of their respective property.

57.     As a direct result of Defendant's theft, DHC East, DHC West, DHC Far East and DHC Realty sustained damages.  Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount within the jurisdictional limits of this Court.

58.     Upon proof of actual damages, Plaintiff is entitled to additional statutory damages of up to $1,000 from Defendants under Texas Civil Practice & Remedies Code section 134.005(a)(1).

## VII.  COUNT 4 – Money Had and Received

59.     Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

60.     Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for Money Had and Received.

61.     As set forth above, as a result of the activities of the Defendants, the Defendants hold money that belongs to DHC East, DHC West, DHC Far East and DHC Realty.  This money belongs to DHC East, DHC West, DHC Far East and DHC Realty in equity and good conscience and Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount within the jurisdictional limits of this Court.

## VIII.  COUNT 5 – Conversion

62.     Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

63.     Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action

against the Defendants for Conversion.

64.   DHC East, DHC West, DHC Far East and DHC Realty owned their food, inventory, equipment, and money.

65.   As set forth above, the Defendants wrongfully acquired and exercised dominion and control over the personal property of DHC East, DHC West, DHC Far East and DHC Realty through various schemes.

66.   As Defendants had set out to covertly embezzle and steal the assets of DHC East, DHC West, DHC Far East and DHC Realty, a demand for the return of the property prior to the initiation of suit would have been useless.

67.   Defendants' wrongful acts proximately caused injury to these Plaintiffs. Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages from Defendants in an amount within the jurisdictional limits of this Court.

### IX.  COUNT 6 – Breach of Fiduciary Duty

68.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

69.   Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for breach of fiduciary duty.

70.   Initially, Armando was a manager employed by DHC East. He became a general manager for DHC East. Subsequently, Armando was the Director of Operations of Chowaiki Holdings and an agent for Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and therefore owed a fiduciary duty to each of these entities. As Director of Operations, Armando had supervision and control of the operations of DHC East, DHC West, DHC Far East, and DHC Realty.

71.   Yvette was an employee of DHC Far East and an agent for DHC East, DHC Far East, and DHC West and therefore owed a fiduciary duty to each of these entities.

72.   Hector was an employee of DHC Far East and the general manager for both and an agent for DHC East and then DHC West and therefore owed a fiduciary duty to each of these entities.

73.   As management, agents and employees of these entities, the Defendants owed these entities duties of loyalty and utmost good faith, candor, integrity in the strictest kind, fair and honest dealing, and full disclosure.  Additionally as management, agents and employees, the Defendants owed duties to refrain from self-dealing and usurption of business opportunities, which duty extended to their spouses and other persons whose interests were closely aligned with those of the Defendants.

74.   Defendants breached their fiduciary duties by engaging in the activities set forth above.

75.   Defendants' breaches of duty resulted in injuries to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and resulted in unjust benefits to each of the Defendants.

76.   Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages within the jurisdictional limits of this Court. Additionally, Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek the imposition of a constructive trust on all proceeds, funds or property obtained by Defendants as a result of the breach of their fiduciary duties.

## X.  COUNT 7 – Fraud

77.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

78.   Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead

a cause of action against Defendants for common-law fraud.

79.     Defendant Armando represented to Chowaiki Holdings that if he were hired he would, *inter alia* do the following:

    (1)     ensure all of the employees and managers perform their job responsibilities and meet expectations in all areas of their job descriptions;

    (2)     hire high quality people;

    (3)     continuously improve the morals of all employees;

    (4)     provide appropriate and effective counseling and discipline for employees and maintain proper documentation;

    (5)     maximize financial performance and profits of the Restaurants including meeting food cost budgets, meeting labor budgets and meeting operating costs;

    (6)     ensure business and personal practices are within the law and consistent with company policies and procedures;

    (7)     be a role model and set a positive example for the employees;

    (8)     enforce all company policies;

    (9)     follow procedures to maintain the safety and security of all employees and company assets;

    (10)    act with a high degree of integrity and treat all employees with honesty, respect, and dignity.

Armando also represented to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty, that the cost of food for the Restaurants was "normal" according to Fuddrucker's corporate representatives. Additionally, the Defendants made numerous

representations to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty that the costs of food, labor, vehicles and equipment for these entities was high as a result of factors other than the Defendants' theft, embezzlement and mismanagement.

80.    These representations were material and they were false.

81.    When the Defendants made the representations, the Defendants knew they were false or made them recklessly, as positive assertions, without knowledge of their truth.

82.    The Defendants made these representations with the intent that Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty act on them.

83.    Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty relied on the representations of Defendants by hiring Armando, by continuing to allow Defendants to retain their positions, and by not examining the losses incurred as a result of the activities of the Defendants.

84.    The representations of the Defendants caused injury to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and these Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

## XI.  COUNT 8 – Fraud by Non-Disclosure

85.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

86.    Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead causes of action against Defendants for fraud by non-disclosure.

87.    As set forth above, the Defendants concealed from or failed to disclose to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty facts regarding their activities to embezzle and steal from the Restaurants including, but not limited to, all of the

facts set forth above.

88. As set forth above, the Defendants were management, employees and/or agents of Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and therefore had a duty to disclose these facts to these Plaintiffs.

89. These facts were material.

90. The Defendants knew that Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty were ignorant of their concealed activities and that these entities did not have an equal opportunity to discover the facts.

91. The Defendants were deliberately silent when they had a duty to speak and, in fact, threatened to terminate any employee who did speak about these facts.

92. By failing to disclose and actively concealing these facts, the Defendants intended to induce Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty to take some action or refrain from acting. Specifically, the Defendants intended to keep their illegal and fraudulent schemes concealed from these Plaintiffs.

93. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty relied on the Defendants' non-disclosure by not firing Defendants and remaining ignorant of the Defendants' theft, embezzlement and other schemes.

94. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty were injured as a result of acting without the knowledge of the undisclosed facts. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount to be determined by this Court which is within the jurisdictional limits of this Court.

## XII. COUNT 9 – Tortious Interference with Prospective Relations

95.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

96.    Plaintiffs DHC East, DHC West, and DHC Far East plead a cause of action for tortious interference with prospective relations.

97.    There was a reasonable probability that Plaintiffs DHC East, DHC West, and DHC Far East would have entered into a business relationship with various customers who called for catering services.

98.    Armando intentionally interfered with these relationships by usurping these catering opportunities for Armando's own business and/or for a third party business who compensated Armando for steering Fuddrucker's prospective customers to it.

99.    Armando's conduct was fraudulent and a breach of his fiduciary duties to DHC East, DHC West, and DHC Far East and therefore independently tortious or unlawful.

100.   Defendant's interference proximately caused injuries to DHC East, DHC West, and DHC Far East.

101.   DHC East, DHC West, and DHC Far East suffered actual damages or losses in an amount to be determined by this Court and they seek unliquidated damages within the jurisdictional limits of this Court.

### XIII.  COUNT 10 – Conspiracy

102.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

103.   Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty allege that the Defendants conspired to commit the above actions and are therefore jointly and severally liable for all damages to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty.

104.   The Defendants were members of a combination of two or more persons.

105.    The purpose of this combination was to accomplish an unlawful purpose, as set forth above.

106.    The Defendants had a meeting of the minds on the object or course of action, and each of the Defendants committed an unlawful, overt act to further the object or course of action.

107.    Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty suffered injury as a proximate result of the wrongful acts of the Defendants.

108.    Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek actual damages from each of the Defendants, jointly and severally, in an amount to be determined by this Court.

### XIV.  COUNT 11 – Declaratory Judgment

109.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

110.    David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty plead an action for declaratory judgment pursuant to 28 U.S.C. §2201, et seq.  David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty seek a determination of liability on the loan of money alleged by Yvette. Debtor additionally seeks a determination of the validity, extent or priority of any lien asserted by Yvette. Specifically, they seek a determination that Yvette obtained the money loaned through the embezzlement and theft set forth above and thatPlaintiffs are therefore not liable to repay stolen funds. Alternatively, if liability on the loan is established, David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty seek a determination as to which of them is liable for repayment of the loan.

### XV.  EXEMPLARY DAMAGES

111.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

112.    The injuries of Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty resulted from the Defendants' actual fraud or malice, which entitles these Plaintiffs to

exemplary damages under Texas Civil Practice & Remedies Code Section 41.003. Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek the imposition of exemplary damages against each of the Defendants in the highest amount allowed by law.

## XVI. ATTORNEYS FEES

113. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

114. Plaintiffs are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code § 134.005 and Texas Business and Commerce Code § 24.013 and plead for the recovery of same.

## XVII. CONDITIONS PRECEDENT

115. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

116. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs ask that the Court issue citation for the Defendants to appear and answer, and that Plaintiffs be awarded a judgment against Defendants, jointly and severally, for the following:

   a.   The avoidance and recovery of all fraudulent transfers to the Defendants.

   b.   The avoidance and recovery of all post-petition transfers to the Defendants.

   c.   Actual damages.

   d.   Statutory damages.

   e.   Imposition of constructive trust.

   f.   Exemplary damages.

   g.   Declaratory Judgment.

   h.   Attorneys fees.

i.      Court costs.

j.      Prejudgment and postjudgment interest at the highest rate allowed by law.

k.      Attorney fees.

l.      All other relief to which Plaintiffs are entitled.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas  79949-1770
Phone:  915-532-3911
FAX: (915) 541-6440

By: _____
Corey W.  Haugland
State Bar No.  09234200
Jamie T. Wall
State Bar No. 24028200
Attorneys for Plaintiffs