IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| DHC REALTY, LLC, | § | Case No.: 11-30977-HCM |
| | § | |
| Debtor, | § | |
| | § | |
| DHC REALTY, LLC, CHOWAIKI | § | |
| HOLDINGS, LLC, EL PASO DHC | § | |
| ENTERPRISES, LLC, EL PASO DHC | § | |
| ENTERPRISES FAR EAST, LLC, | § | |
| EL PASO DHC ENTERPRISES | § | |
| WEST, LLC, and DAVID CHOWAIKI | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No.: 12-03012 |
| | § | |
| ARMANDO ARMENDARIZ, | § | |
| YVETTE ARMENDARIZ, and | § | |
| HECTOR ARMENDARIZ, | § | |
| | § | |
| Defendants. | § | |

DEFENDANTS ARMANDO ARMENDARIZ, YVETTE ARMENDARIZ, AND HECTOR
ARMENDARIZ'S MOTION TO DISMISS UNDER FRCP (12)(b)(6) OR IN THE
ALTERNATIVE, FOR MORE DEFINITIVE STATEMENT

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY
JUDGE:

Defendants Armando Armendariz, Yvette Armendariz, and Hector Armendariz

(collectively "Defendants"), by their undersigned counsel, hereby move this Court for an

order dismissing the Complaint of Plaintiffs DHC Realty, LLC, Chowaiki Holdings, LLC,

El Paso DHC Enterprises, LLC, El Paso DHC Enterprises Far East, LLC, El Paso DHC

Enterprises West, LLC, and David Chowaiki (collectively "Plaintiffs"), pursuant to

§ 12(b)6) of the Federal Rules of Civil Procedure ("FRCP") and in support of this motion show the Court as follows:

1.　　The Complaint should be dismissed in its entirety under Rule 12(b)(6) for failure to meet the pleading standards set forth in Rule 8(a), as Plaintiffs' Complaint is vague, overly verbose and does not provide a "short and plain statement of the claim" (FRCP　§ 8(a)(2)).

2.　　The Complaint should likewise be dismissed in its entirety under Rule 12(b)(6) for failure to meet the pleading standards set forth in Rule 8(a) as it contains eleven causes of action, each of which is supported by allegations, which are included in twenty-six paragraphs relating alleged facts of this matter, which are so vague and ambiguous that Defendants do not have fair notice of the claims brought against them, and are therefore unable to reasonably prepare a response. Alternatively to the dismissal requested in this paragraph and in paragraph "1.", above, Defendants respectfully request that this Court order Plaintiffs to file a more definitive statement in the form of an amended complaint.

3.　　The Complaint should be dismissed in its entirety under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, as Plaintiffs provide only conclusory allegations, and in support of the causes of action claimed against Defendants, provide only irrelevant, alleged facts, alleged facts which offer no support for the causes of action claimed, and alleged facts based only upon "information and belief", see Complaint, a copy of which is attached hereto as Exhibit "1".

4.　　The support for this motion is contained in the attached Memorandum of Points and Authorities and exhibits.

## MEMORANDUM OF POINT AND AUTHORITIES

### INTRODUCTION

1.    Plaintiffs filed their Complaint on May 23, 2012.  The Complaint alleges eleven causes of action which are supported by twenty-six paragraphs of factual allegations, none of which support or are relevant to any of the eleven causes of action. The twenty-six paragraphs vaguely refer to the "schemes" of the Defendants without any description, offer many conclusory allegations, and allegations supported only "by information and belief" without any material support, including the amount of claimed damages which Plaintiffs further state "is not known", see Exhibit 1.

### ARGUMENTS AND AUTHORITIES

#### Prolix Complaint

2.    FRCP § 8(a)(2) states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The standards for dismissing a complaint for failing to meet the "short and plain" requirements of § 8(a)(2) are set forth in *Gordon v. Green,* 602 F.2d 743 (5th Cir., 1979) ("Gordon").  In *Gordon,* the court states that:

> "the underlying purpose of Rule 8...is 'to *eliminate* prolixity in pleading and to achieve brevity, simplicity, and clarity.' *Knox v. First Security Bank of Utah,* 10 Cir., 1952, 196 F.2d 112, 117 (emphasis added)."

The court continues and cites numerous cases which describe circumstances in which a complaint may be dismissed for being vague and overly verbose, such as *Johnson v. Hunger, S.D.N.Y.,* 266 F.Supp. 590 (1967), which dismissed plaintiff's complaint without prejudice and described the complaint as "a confusing and foggy mixture of evidentiary statements, arguments and conclusory matters", see *Gordon.*    Further, *Gordon*

demonstrates that complaints need not be numbered in the hundreds or thousands of pages in order to be subject to the same dismissal, by citing *Benner v. Philadelphia Musical Society, Local 77, of the American Federation of Musicians*, E.D.Penn., 32 F.R.D. 197 (1963), which dismissed without prejudice a 26 page complaint filled with "'prolix, argumentative and conclusionary paragraphs'".

3. The standards for dismissal for violating the "short and plain" requirements of § 8(a)(2) are also seen in *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061-62 (9th Cir. 2011) ("Cafasso"). In *Cafasso*, the court cites *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.1981), which states that "Rule 8(a) is violated when a complaint is excessively 'verbose, confusing and almost entirely conclusory.'" *Cafasso* also cites McHenry v. Renne, 84 F.3d 1172, 1177-80 (9th Cir.1996), which upheld "a Rule 8(a) dismissal of a complaint that was 'argumentative, prolix, replete with redundancy, and largely irrelevant.'" *Cafasso* further clarifies:

> "While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.' 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed.2010).

4. Plaintiffs' complaint, in similar fashion as the cases mentioned above, is vague, confusing, and overly verbose. Most of the factual allegations are either irrelevant or conclusory. See Complaint, ¶¶ 15-40. ¶ 17, for example, provides a long irrelevant list of things Defendant Armando Armendariz was hired to do. ¶ 20 vaguely describes four allegations, from embezzling money to running a criminal enterprise, which are either not supported at all in the remaining paragraphs, or are supported by further vague,

irrelevant, or conclusory statements. None of the other paragraphs, for example, state anything about a criminal enterprise, or give any factual support to this allegation. ¶ 32, likewise gives a lengthy description of the operating costs of the Plaintiffs' restaurants which is irrelevant, and from which nothing can be inferred. The remaining paragraphs are either irrelevant, vague, or conclusory allegations, vaguely speaking of "schemes" without describing what they are referring to, or other such statements. This material at times also presents malicious statements. See Complaint ¶ 21, which contains a completely irrelevant, and conclusory allegation relating to Danny Armendariz, who is not even a party to this litigation, and alleges very personal details, such as a failed business and child support payments. Such malignant statements do nothing to fulfill the "short and plain" requirements of § 8(a)(2).

5.      In the end, Plaintiffs' complaint completely lacks the "brevity, simplicity, and clarity" as required by *Gordon*, and falls well short of the "short and plain" requirements of § 8(a(2), and should be dismissed.

### Fair Notice

6.      The United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ("Twombly"), stated that it is required, according to FRCP § 8(a)(2), to provide

> "'a short and plain statement of the claim showing that the pleader is entitled to relief' **in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests**,' *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)". (emphasis added)

7.      Dismissals may also be granted in cases where a complaint is so lacking in the criteria to support its claims, that the defending party has not received fair notice of the claim and is unable to reasonably offer a response. *Anderson v. U.S. Department of*

---

*Housing and Urban Development*, 554 F.3d 525 (5th Cir., 2008) ("Anderson") details the criteria for these types of dismissals:

> "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading. *See Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 165-66 (5th Cir.1999).
>
> Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. *Id.* In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law."

The present Complaint, in addition to failing to meet the "short and plain" requirements of Rule 8(a)(2), also fails to properly give Defendants notice of what the claims are. As stated above, in *Anderson*, a complaint must "allege facts regarding what conduct violated those laws..." The Complaint only provides factual allegations which are either irrelevant, vague, or conclusory, as mentioned above, and is therefore "devoid of facts" (*Id.*) to support its claims, and fails to give Defendants fair notice of the claims made against them, and Defendants are therefore unable to reasonably prepare a response.

8.      It is also not possible to determine how ¶¶ 15-40 of the Complaint support each of the eleven causes of action. The Complaint relies upon the same ¶¶ 15-40 to support each separate cause of action, making it impossible to determine which paragraphs support which cause(s) of action. Rather than offer a "short and plain" pleading in compliance with Rule 8(a)(2), clearly stating a separate, and relevant, set of facts to support each cause of action, Plaintiffs provide a confusing mess of allegations from which Defendants are expected to interpret, and somehow determine how they are intended to support each of the causes of action.

---

9.    Defendants therefore request that Plaintiffs complaint be dismissed for failure to comply with Rule 8(a)(2) as set forth above. Defendants also believe that given leave to amend, Plaintiffs will simply state further such allegations in an amended complaint, however, alternative to dismissal, Defendants request and order from this Court for Plaintiffs to file a more definitive statement in the form of an amended complaint.

**Failure to State a Claim**

10.    Plaintiffs' Complaint should be dismissed in its entirety under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standards for granting a dismissal for failure to state a claim under Rule 12(b)(6) are outlined in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ("Twombly") and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009) ("Iqbal"). Twombly states:

> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations...a plaintiffs obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..."

> So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Hawai 1953))we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

*Iqbal* further clarifies and outlines the same standards as discussed in *Twombly*, stating that a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The court goes on to state:

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' *Id.*, at 557," citing *Twombly. ...*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. ...

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555." Citing *Twombly*

11.     In addition to the standards set forth above, as Plaintiffs have alleged fraud, to support this allegation, they must plead with particularity, per FRCP § 9(b) ("Rule 9(b)"): "a party must state with particularity the circumstances constituting fraud or mistake." As stated in *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) ("Flaherty"), "[a] dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim" (citing *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir. 1993)).

12.     To provide the factual basis for each of the eleven causes of action, the Complaint relies upon the allegations in ¶¶ 15-40 by stating for each cause of action, "Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim". See Exhibit 1.  These factual allegations provide no support to any of the eleven causes of action pleaded, and therefore do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (See *Twombly)*. They are either irrelevant, vague, conclusory, or based solely upon information and belief.  Many of them also lack particularity as required by Rule 9(b).

13.     As clarified by *Tuchman v. DSC Communications*, 14 F.3d 1061 (1994), citing *Wexner v. First Manhattan Co.,*902 F.2d 169, 172 (2d Cir.1990) ("Wexner"), claims for

fraud cannot be based on "'speculation and conclusory allegations'". *Wexner* further states that "[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud...." Therefore, vague such statements such as in ¶ 22 which states that "upon information and belief, an unknown amount of revenue...was stolen", or in ¶ 27 which vaguely refers to "schemes" and then states that "Restaurant funds" were used to purchase food and equipment which Defendant Armando Armendariz "kept and, upon information and belief, sold to other entities," or in ¶ 34 which states that "upon information and belief..corporate opportunities" were "usurped" and directed away from "the Restaurants," each fail to provide specific facts to satisfy Rule 9(b).

14.     The other factual allegations are either completely irrelevant (i.e., ¶ 17 which lists out each of the alleged ten reasons - a. through j. - for which Defendant Armando Armendariz was hired, ¶ 23, which states that "sloth and lack of diligence...resulted in filthy restaurants which turned off customers", ¶ 32 which discusses operating costs at length, see also ¶¶ 18 and 35), vague (i.e. ¶ 25 which vaguely refers to "embezzled" money and a "payment scheme", ¶ 36 referring to "these schemes", or ¶ 39 "Defendants' embezzlement schemes"), or conclusory (i.e. ¶ 21, stating alleged reasons why "Danny" was hired, or ¶ 31, stating that large amounts of food were taken "for no apparent reason other than to damage the Plaintiffs' business operations"). Furthermore, as required by *Iqbal,* cited above, no reasonable inferences can be drawn from the factual allegations presented by Plaintiffs that Defendants are liable for the alleged misconduct. In the end, as each of the factual allegations fail to provide any

support to any of the eleven causes of action, Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and therefore, should be dismissed in its entirety.

## CONCLUSION

15.    Plaintiffs' Complaint falls well short of the standards set forth in Rule 8(a)(2) and is far from well pleaded. The rule clearly states that a pleading must be "short and plain", and the courts have stated that the purpose of this is so that defendant can have a clear understanding of what the allegations are and can respond accordingly. If a complaint falls short of this requirement, it not only puts the defendant at a disadvantage, as they do not know how to properly respond, but also puts an added burden on the court as well, as they have to sort through the same vague and confusing pleading. For this reason, when a complaint is vague and overly verbose, and offers only irrelevant and conclusory allegations, as in this present Complaint, courts have either dismissed or requested that the plaintiff submit an amended pleading.

16.    Defendants have likewise shown that Plaintiffs' Complaint fails to comply with Rule 8(a)(2) in that it fails to provide Defendants "'fair notice of what the . . . claim is and the grounds upon which it rest.,'" See *Twombly,* citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Complaint relies on factual allegations which do not support any of the claimed causes of action. Further, as the same factual allegations are relied upon to support each cause of action, it is not possible to determine which allegations support which cause of action, and Defendants are left having to sort through a mess of allegations and determine how they were intended to support the causes of action. Defendants therefore do not have fair notice of the claims

made against them, and are unable to prepare a response. Plaintiffs' Complaint should be dismissed for failure to comply with Rule 8(a)(2).

17.     Lastly, the causes of action claimed by Plaintiffs' are not in any way supported by the factual allegations provided. The U.S. Supreme Court has made it clear in both *Twombly* and *Iqbal* as referenced above, that it is not sufficient for a Complaint to offer only causes of action without providing an adequate and proper factual support to those causes of action. A complaint devoid of such proper factual support fails under Rule 12(b)(6) to state a claim upon which relief can be granted. The Complaint also fails under Rule 9(b) to plead fraud with particularity. As such, Plaintiffs' Complaint should be dismissed.

Defendants therefore respectfully request that Plaintiffs' Complaint be dismissed in its entirety pursuant to Rule 12(b)(6) as set forth above. In the alternative, Defendants respectfully request that this Court order Plaintiffs to file a more definitive statement in the form of an amended complaint.

**DATED:** July 6, 2012.

Respectfully submitted,

**FIRTH♦JOHNSTON♦MARTINEZ**
415 N. Mesa, Suite 300
El Paso, Texas 79901
Phone: (915) 532-7500
Fax:     (915) 532-7503

/s/ Christopher R. Johnston
Christopher R. Johnston
State Bar No. 10834200

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| DHC REALTY, LLC, | § | Case No.11-30977-HCM |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| DHC REALTY, LLC, CHOWAIKI | § | |
| HOLDINGS, LLC, EL PASO DHC | § | |
| ENTERPRISES, LLC, EL PASO DHC | § | |
| ENTERPRISES FAR EAST, LLC, | § | |
| EL PASO DHC ENTERPRISES | § | |
| WEST, LLC, and DAVID CHOWAIKI, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. _____ |
| | § | |
| ARMANDO ARMENDARIZ, | § | |
| YVETTE ARMENDARIZ, and | § | |
| HECTOR ARMENDARIZ, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

COME NOW, DHC REALTY, LLC, CHOWAIKI HOLDINGS, LLC, EL PASO DHC

ENTERPRISES, LLC, EL PASO DHC ENTERPRISES FAR EAST, LLC, EL PASO DHC

ENTERPRISES WEST LLC, and DAVID CHOWAIKI, Plaintiffs herein, complaining of

ARMANDO ARMENDARIZ, YVETTE ARMENDARIZ, and HECTOR ARMENDARIZ, and for

cause of action would respectfully show the Court the following:

## I. PARTIES

1.  Debtor and Plaintiff DHC REALTY, LLC (hereinafter "DHC Realty" or "Debtor") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

2.  Plaintiff CHOWAIKI HOLDINGS, LLC (hereinafter "Chowaiki Holdings") is a limited liability company that is organized and existing under the laws of the State of Delaware with its principal place of business in El Paso County, Texas.

3.  Plaintiff EL PASO DHC ENTERPRISES, LLC (hereinafter "DHC East") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

4.  Plaintiff EL PASO DHC ENTERPRISES FAR EAST, LLC (hereinafter "DHC Far East") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

5.  Plaintiff EL PASO DHC ENTERPRISES WEST LLC (hereinafter "DHC West") is a limited liability company that is organized and existing under the laws of the State of Texas with its principal place of business in El Paso County, Texas.

6.  Plaintiff DAVID CHOWAIKI is an individual who is a resident of El Paso County, Texas.

7.  Defendant ARMANDO ARMENDARIZ (hereinafter "Armando") is an individual resident of El Paso County, Texas who may be served with process at his usual place of abode at 11316 Lindenwood Avenue, El Paso, El Paso County, Texas 79936, or wherever else he may be found.

8.  Defendant YVETTE ARMENDARIZ (hereinafter "Yvette") is an individual resident of El

Paso County, Texas who may be served with process at her usual place of abode 11316 Lindenwood Avenue, El Paso, El Paso County, Texas 79936, or wherever else she may be found.

9.  Defendant HECTOR ARMENDARIZ (hereinafter "Hector") is an individual resident of El Paso County, Texas who may be served with process at his usual place of abode at 14201 Desert Sage, Horizon City, El Paso County, Texas 79928, or wherever else he may be found.

## II. JURISDICTION & VENUE

10.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and 11 U.S.C. §548 and 549. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (H) (K) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1409.

11.  As set forth below, this matter involves a scheme by the Defendants to steal and embezzle hundreds of thousands of dollars from the Debtor, DHC East, DHC West, and DHC Far East. Part of this scheme involved the theft of revenue from vending machines owned by the Debtor and the theft of equipment owned by the Debtor, both pre and post-petition. Debtor's suit seeks, *inter alia,* the recovery of these fraudulent and post-petition transfers which directly impact the administration of the estate. Debtor's suit also seeks a determination of the validity, extent and priority of the debt that Yvette has previously asserted against Debtor.

12.  The claims of the non-Debtor Plaintiffs are inseparably intertwined with the claims of the Debtor. As set forth below, Yvette has previously made demand on David Chowaiki, DHC East, DHC West, and DHC Far East as well as Debtor for the payment of the alleged loan so a determination of liability is impossible without each alleged obligor. Moreover, as

Plaintiffs have asserted that the money Yvette used to make the loan was stolen from the Debtor, DHC East, DHC West, and DHC Far East, these parties' claims are intertwined and should be tried together.

13. With regard to their other claims, Plaintiffs have asserted that Defendants engaged in a broad based scheme to embezzle and steal from the Restaurants without regard to the whether the theft was from the Debtor, DHC East, DHC West, or DHC Far East, and indeed, there is no way to segregate the activities of the Defendants. Again, the claims of the Plaintiffs are inseparable and should be tried together.

14. The Defendants have consented to bankruptcy court jurisdiction over the claims asserted herein.

### III. FACTS

15. Plaintiff Chowaiki Holdings is owned by Plaintiff David Chowaiki, his brother Hilel Chowaiki (50% – 50%). Chowaiki Holdings, through Plaintiffs DHC East, DHC Far East, and DHC West, own and operate three Fuddrucker's® franchise restaurants located at: (1) 7942 Gateway East, El Paso County, Texas (DHC East); (2)1887 N. Zaragosa, El Paso County, Texas (DHC Far East); and (3) 5030 N. Desert, El Paso County, Texas (DHC West) (hereinafter the "Restaurants").

16. Plaintiff and Debtor DHC Realty owns and manages the real properties upon which the Restaurants are located, owns the fixtures and equipment inside the Restaurants, including the vending machines, and owns several vehicles utilized by the Restaurants to provide catering. David and Hilel Chowaiki (the "Chowaikis") oversee the general operations of all of these entities.

422474.1                          Page 4

17. In February 2006, DHC East hired Armando as one of several new managers for the Fuddrucker's operation in El Paso, Texas, which consisted of the DHC East and the under construction DHC West. Subsequently, Armando became general manager for DHC West; and, he subsequently became director of operations for DHC East and DHC West. After DHC Far East became operational, it too became subject to Armando's management as Director of Operations. Three months after DHC Far East became operational, Chowaiki Holdings was created. Armando later became an employee of Chowaiki Holdings as Director of Operations over all three restaurants. At all times thereafter, Armando acted as an agent for DHC East, DHC Far East, DHC West, DHC Realty and Chowaiki Holdings. Armando was hired for this position based upon his representations, *inter alia*, that he would:

    a. ensure all of the employees and managers perform their job responsibilities and meet expectations in all areas of their job descriptions;

    b. hire high quality people;

    c. continuously improve the morals of all employees;

    d. provide appropriate and effective counseling and discipline for employees and maintain proper documentation;

    e. maximize financial performance and profits of the Restaurants including meeting food cost budgets, meeting labor budgets and meeting operating costs;

    f. ensure business and personal practices are within the law and consistent with company policies and procedures;

    g. be a role model and set a positive example for the employees;

    h. enforce all company policies;

    i. follow procedures to maintain the safety and security of all employees and company assets;

j.  act with a high degree of integrity and treat all employees with honesty, respect, and
dignity.

18. Chowaiki Holdings trusted Armando and after he was hired the Chowaikis even loaned him
$5,000 to help him and his wife Yvette buy a house.

19. Thereafter, Armando hired his wife Yvette to handle payroll for the Restaurants and his
brother Hector to manage one of the Fuddrucker's restaurants (initially the Yarborough
location (DHC East) and later the Westside location (DHC West)). Both Yvette and Hector
were employed by DHC Far East (as were all other Restaurant employees regardless of the
location at which they worked).

20. Armando, along with Yvette and Hector, engaged in a series of activities to embezzle monies
from the Plaintiffs, steal inventory and other assets from the Restaurants, use the Restaurants
to run a criminal enterprise, and use the Restaurants and their positions therein for personal
gain. These activities began pre-petition but upon information and belief some activities
continued post-petition – until the Defendants were fired in April 2012. These activities
include, but are not limited to, the actions set forth below.

21. Armando hired Danny Armendariz (hereinafter "Danny"), who had fathered a child with
Yvette's sister, to manage the Gateway East restaurant despite the fact that Danny had no
experience in the restaurant business and did not know how to cook or even how to run a
cash register. Danny was hired because his mortgage company had failed, he had gone
bankrupt, and he could not pay child support to Yvette's sister. Specifically, Armando hired
the unqualified Danny in a management position to ensure that Yvette's sister would receive
child support payments.

22.    In addition to her payroll duties, Yvette was also put in charge of collecting money from the vending machines located within the Restaurants for the Debtor. The Debtor later discovered that the meters on the vending machines had been removed by, or at the direction of, one or more of the Defendants, which prevented any mechanical count of revenue from the machines. Upon information and belief, an unknown amount of revenue from vending was stolen from DHC Realty by Yvette and/or the other Defendants for their personal use. Upon further information and belief, this theft continued after the Debtor filed for bankruptcy protection.

23.    Hector repeatedly falsified his time sheets to collect pay for time spent at his home. Armando consistently lied about the amount of time he was devoting to the business. Armando represented that he was working 100 hours per week. Other employees have represented that Armando was rarely seen at the Restaurants. The El Paso County Health Department's Food Establishment Inspection scores for the Restaurants under Armando's supervision were consistently failing. Danny likewise shirked his management responsibilities by failing to work sufficient hours or to properly supervise employees. The sloth and lack of diligence characterizing the management by Hector, Armando, and Danny resulted in filthy restaurants which turned off the customers.

24.    While acting as director of operations for the Restaurants, Armando and Yvette ran a side business selling vehicles and providing financing for them[1]. Armando and Yvette sold vehicles to employees of the Restaurants and/or hired people to work in the Restaurants to whom he had sold vehicles. Additionally, Armando and/or Yvette would provide short term

---

[1] Upon information and belief, neither Armando nor Yvette were licensed to engage in this activity.

loans to employees and charge them usurious interest rates. Thereafter, Armando and Yvette would ensure that these employees could make their payments to him by paying them for full shifts and paying them overtime regardless of whether such services were warranted. Upon information and belief, Armando and Yvette ensured that such employees were paid whether or not the employees actually provided services to the Restaurants. Armando and Yvette tailored their vehicle financing contracts so that the payments would be due the day after the employees were paid by DHC Far East.

25.     Similarly, with the money that Armando and Yvette had embezzled from Plaintiffs, they were able to buy houses which they rented out to Restaurant employees, utilizing the same payment scheme set out above to ensure that such employees were able to afford the rent and that it would be paid timely.

26.     The employees who owed Armando and/or Yvette money were under their protection and were not allowed to be fired. One such employee was Melanie Hann. During her employment Ms. Hann stole money from the restaurant at which she worked by pocketing money from individual sales and having the meals entered on the restaurant's books as complimentary. Through this and other schemes Ms. Hann (and Others) was able to embezzle between $19,000 and $50,000 from the restaurant. When a customer eventually turned her in to Armando, he ignored the customer and, in fact, promoted Ms. Hann. When the Chowaikis noticed that Ms. Hann's store was reporting $13,000 in discounts on $70,000 of sales, they called Armando to investigate. Armando initially told the Chowaikis that it was a "glitch in the computer system." Despite the evidence against her, Armando fiercely defended Ms. Hann and argued against firing her. It was later discovered by Plaintiffs that

Ms. Hann was both a tenant of Armando and owed him money for the purchase of a vehicle.

27.     In addition to these schemes, during his employment, Armando routinely used Restraurant funds to purchase food and restaurant equipment which he kept and, upon information and belief, sold to other entities.

28.     Armando, Yvette and Hector blatantly took significant quantities of prepared and unprepared food from the Restaurants for their personal use without paying or accounting for same.

29.     Additionally, Armando sold coupons and gift cards to customers with unauthorized discounts, often keeping 100% of the proceeds for himself. Also, Armando used restaurant food, coupons and discounts to pay people who had provided personal services to him and/or his family.

30.     Armando also stole money from yearly special events at which the Restaurants sold food, such as Amigo Airshow, KLAQ BBQ, and the El Paso Street Festival. For these special events, Armando monitored the events and prohibited all employees from counting the money or ringing up sales (despite the fact that Fuddruckers had manual cash registers which would have been used). Armando wouldn't let anyone else count or deposit the money; he insisted that all money be turned over to him and he would tell the stores what sales to ring up or report from the events at a later date. Although the actual sales at each of these events were estimated to be tremendous, Armando reported nominal sales for each event for the five years he was employed by the Restaurants. Armando also [prevented the managers from keeping proper inventory for these sales and events, going so far as changing inventory records at the stores.

31.     Armando, without authority and without any disclosure to his superiors, gave away large

quantities of food owned by the Restaurants, including 4,000 meals at the Amigo Airshow in both 2010 and 2011. Armando, for no apparent reason other than to damage the Plaintiffs' business operations, consistently provided below cost pricing to catering customers. The catering operations were controlled by Armando and used in every way imaginable by him to steal from DHC East, DHC West, DHC Far East and DHC Realty.

32.     Concerned about the high food costs, which were running at about 40% of total operating costs at the Restaurants, the Chowaikis asked Armando to check with Fuddruckers Corporate to determine what the appropriate food costs should be. Armando told the Chowaikis that the corporate representative of Fuddruckers had told him that food costs at most stores were running at about 36-37% of total operating costs. The Chowaikis later discovered from Fuddruckers Corporate that the average food costs run at about 29.5%, and that the worst store ever (before Armando started overseeing the El Paso Fuddruckers) had food costs approximately 32% of total operating costs. After Armando's access to the Restaurants was restricted, food costs dropped drastically. Food costs were under 30% of total operating costs at all three Restaurants the first full month after Armando was out.

33.     On one occasion, Armando notified the Chowaikis that the Restaurants needed more catering trucks. Armando stated that he had located some vehicles that he could get at cost as long as they were paid for in cash. Armando requested and was given the authority to purchase the vehicles for DHC Realty. The Plaintiffs later discovered that the vehicles were titled in Armando's name rather than DHC Realty and that they had actually been marked up for sale. Upon information and belief, Armando had the price of the vehicles marked up and pocketed the difference. Moreover, although Armando was supposed to maintain all of the vehicles

utilized by the Restaurants, he failed to do so and one of the vehicles' engine seized because its oil was not changed.

34.     Upon information and belief, Armando usurped corporate opportunities by directing catering requests away from the Restaurants and into a different catering business from whom he received compensation.

35.     Although Armando was supposed to be present at the Restaurants in his capacity as general manager, he was rarely present at these facilities, except to collect from his tenants, his borrowers, and the buyers of cars. As a result, Armando failed to properly maintain the Restaurant equipment and/or facilities leading to increased costs for the Restaurants and DHC Realty. This also hurt the restaurants' image and cost them customers.

36.     While Armando, Yvette and Hector were utilizing these schemes to defraud the Plaintiffs, they told employees not to ever talk to the Chowaikis and that anyone who did would be fired. Moreover, any employee who started asking too many questions about the activities of Armando, Yvette and Hector was fired.

37.     By 2010 the Plaintiffs were in financial trouble as a result of the Defendants' activities. Although just a few years prior Armando and Yvette needed to borrow $5,000 to purchase a home, their schemes had now put them in a position to lend thousands of dollars to the Restaurants. To this end, on March 29, 2010 and June 7, 2010, Yvette loaned $100,000 to the Restaurants via three checks made out to David Chowaiki.

38.     On or about May 23, 2011 (hereinafter the "Petition Date"), DHC Realty filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Western District of Texas, El Paso Division. Since the Petition Date, DHC Realty has continued to operate as a debtor-in-possession. In its effort to reorganize, DHC Realty began evaluating

selling or closing some of the Restaurants.  In January of 2012, Armando made an unsolicited offer to buy the Zaragosa restaurant.

39.  Thereafter, Plaintiffs discovered many of the Defendants' embezzlement schemes and terminated each of the Defendants, if they didn't at first resign as a ersult of Plaintiffs' investigation into their misconduct.  The month after the Defendants were no longer employed, food costs were under 30% at all three or the Restaurants, employment costs had been reduced considerably at each of the Restaurants, vending revenues from all three Restaurants had increased dramatically, as had total revenues.  The extent of Defendants' schemes is still being investigated and the total amount of damages incurred by the Plaintiffs is not known, but upon information and belief is in excess of $400,000.00.

40.  On or about April 18, 2012, Yvette sent a demand letter to David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty demanding immediate payment on the $100,000 loan. Several days later, Yvette sent another letter withdrawing her demand against DHC Realty because DHC Realty was in bankruptcy.

## IV.  COUNT 1 – Avoidance of Fraudulent Transfer

41.  Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

42.  Debtor DHC Realty pleads for the avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548 and 550.

43.  As set forth above, within four (4) years before the Petition Date in this case, DHC Realty transferred money, equipment and other assets to one or more of the Defendants.

44.  As DHC Realty received no compensation for the theft of its assets, it received less than a reasonably equivalent value in exchange for such transfers.

45.  DHC Realty either became insolvent as a result of these transfers, was about to engage in

business or a transaction for which any property remaining was an unreasonably small capital, intended to incur debts that would be beyond the debtor's ability to pay as such debts matured; or made the transfers to or for the benefit of an insider (Armando) and not in the ordinary course of business.

46.    DHC Realty seeks the avoidance of these transfers and the recovery of the value of these fraudulent transfers in an amount to be determined by this Court pursuant to 11 U.S.C. §§ 544, 548 and 550.

### V. COUNT 2 – Avoidance of Post-Petition Transactions Under 11 U.S.C. §549

47.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

48.    Debtor DHC Realty pleads for the avoidance and recovery of post-petition transactions pursuant to 11 U.S.C. §§ 549 and 550.

49.    As set forth above, after the Petition Date, DHC Realty transferred money, equipment and other assets to one or more of the Defendants.

50.    These transfers were the result of theft by one or more of the Defendants and were therefore not authorized by the Bankruptcy Code or this Court.

51.    DHC Realty seeks the avoidance of these transfers and the recovery of the value of these transfers in an amount to be determined by this Court pursuant to 11 U.S.C. §§ 549 and 550.

### VI. COUNT 3 – Violation of Texas Theft Liability Act

52.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

53.    Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for violation of the Texas Theft Liability Act, Texas Civil Practice and Remedies Code §§ 134.001, *et seq.*

54.    As set forth above, DHC East, DHC West, DHC Far East and DHC Realty had possessory

rights to their food, inventory, equipment, and money.

55.    The Defendants unlawfully appropriated this property by taking it without the effective consent of DHC East, DHC West, DHC Far East or DHC Realty.

56.    The Defendants appropriated the property with the intent to deprive DHC East, DHC West, DHC Far East and DHC Realty of their respective property.

57.    As a direct result of Defendant's theft, DHC East, DHC West, DHC Far East and DHC Realty sustained damages. Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount within the jurisdictional limits of this Court.

58.    Upon proof of actual damages, Plaintiff is entitled to additional statutory damages of up to $1,000 from Defendants under Texas Civil Practice & Remedies Code section 134.005(a)(1).

## VII.  COUNT 4 – Money Had and Received

59.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

60.    Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for Money Had and Received.

61.    As set forth above, as a result of the activities of the Defendants, the Defendants hold money that belongs to DHC East, DHC West, DHC Far East and DHC Realty. This money belongs to DHC East, DHC West, DHC Far East and DHC Realty in equity and good conscience and Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount within the jurisdictional limits of this Court.

## VIII.  COUNT 5 – Conversion

62.    Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

63.    Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action

against the Defendants for Conversion.

64. DHC East, DHC West, DHC Far East and DHC Realty owned their food, inventory, equipment, and money.

65. As set forth above, the Defendants wrongfully acquired and exercised dominion and control over the personal property of DHC East, DHC West, DHC Far East and DHC Realty through various schemes.

66. As Defendants had set out to covertly embezzle and steal the assets of DHC East, DHC West, DHC Far East and DHC Realty, a demand for the return of the property prior to the initiation of suit would have been useless.

67. Defendants' wrongful acts proximately caused injury to these Plaintiffs. Plaintiffs DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages from Defendants in an amount within the jurisdictional limits of this Court.

## IX.  COUNT 6 – Breach of Fiduciary Duty

68. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

69. Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead a cause of action against the Defendants for breach of fiduciary duty.

70. Initially, Armando was a manager employed by DHC East. He became a general manager for DHC East. Subsequently, Armando was the Director of Operations of Chowaiki Holdings and an agent for Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and therefore owed a fiduciary duty to each of these entities. As Director of Operations, Armando had supervision and control of the operations of DHC East, DHC West, DHC Far East, and DHC Realty.

71.  Yvette was an employee of DHC Far East and an agent for DHC East, DHC Far East, and DHC West and therefore owed a fiduciary duty to each of these entities.

72.  Hector was an employee of DHC Far East and the general manager for both and an agent for DHC East and then DHC West and therefore owed a fiduciary duty to each of these entities.

73.  As management, agents and employees of these entities, the Defendants owed these entities duties of loyalty and utmost good faith, candor, integrity in the strictest kind, fair and honest dealing, and full disclosure.  Additionally as management, agents and employees, the Defendants owed duties to refrain from self-dealing and usurption of business opportunities, which duty extended to their spouses and other persons whose interests were closely aligned with those of the Defendants.

74.  Defendants breached their fiduciary duties by engaging in the activities set forth above.

75.  Defendants' breaches of duty resulted in injuries to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and resulted in unjust benefits to each of the Defendants.

76.  Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages within the jurisdictional limits of this Court.  Additionally, Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek the imposition of a constructive trust on all proceeds, funds or property obtained by Defendants as a result of the breach of their fiduciary duties.

## X.  COUNT 7 – Fraud

77.  Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

78.  Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead

a cause of action against Defendants for common-law fraud.

79. Defendant Armando represented to Chowaiki Holdings that if he were hired he would, *inter alia* do the following:

    (1)    ensure all of the employees and managers perform their job responsibilities and meet expectations in all areas of their job descriptions;

    (2)    hire high quality people;

    (3)    continuously improve the morals of all employees;

    (4)    provide appropriate and effective counseling and discipline for employees and maintain proper documentation;

    (5)    maximize financial performance and profits of the Restaurants including meeting food cost budgets, meeting labor budgets and meeting operating costs;

    (6)    ensure business and personal practices are within the law and consistent with company policies and procedures;

    (7)    be a role model and set a positive example for the employees;

    (8)    enforce all company policies;

    (9)    follow procedures to maintain the safety and security of all employees and company assets;

    (10)    act with a high degree of integrity and treat all employees with honesty, respect, and dignity.

Armando also represented to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty, that the cost of food for the Restaurants was "normal" according to Fuddrucker's corporate representatives. Additionally, the Defendants made numerous

representations to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC
Realty that the costs of food, labor, vehicles and equipment for these entities was high as a
result of factors other than the Defendants' theft, embezzlement and mismanagement.

80.   These representations were material and they were false.

81.   When the Defendants made the representations, the Defendants knew they were false or
made them recklessly, as positive assertions, without knowledge of their truth.

82.   The Defendants made these representations with the intent that Chowaiki Holdings, DHC
East, DHC West, DHC Far East and DHC Realty act on them.

83.   Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty relied on the
representations of Defendants by hiring Armando, by continuing to allow Defendants to
retain their positions, and by not examining the losses incurred as a result of the activities of
the Defendants.

84.   The representations of the Defendants caused injury to Chowaiki Holdings, DHC East, DHC
West, DHC Far East and DHC Realty and these Plaintiffs seek unliquidated damages within
the jurisdictional limits of this Court.

### XI.  COUNT 8 – Fraud by Non-Disclosure

85.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

86.   Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty plead
causes of action against Defendants for fraud by non-disclosure.

87.   As set forth above, the Defendants concealed from or failed to disclose to Chowaiki
Holdings, DHC East, DHC West, DHC Far East and DHC Realty facts regarding their
activities to embezzle and steal from the Restaurants including, but not limited to, all of the

facts set forth above.

88. As set forth above, the Defendants were management, employees and/or agents of Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty and therefore had a duty to disclose these facts to these Plaintiffs.

89. These facts were material.

90. The Defendants knew that Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty were ignorant of their concealed activities and that these entities did not have an equal opportunity to discover the facts.

91. The Defendants were deliberately silent when they had a duty to speak and, in fact, threatened to terminate any employee who did speak about these facts.

92. By failing to disclose and actively concealing these facts, the Defendants intended to induce Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty to take some action or refrain from acting. Specifically, the Defendants intended to keep their illegal and fraudulent schemes concealed from these Plaintiffs.

93. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty relied on the Defendants' non-disclosure by not firing Defendants and remaining ignorant of the Defendants' theft, embezzlement and other schemes.

94. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty were injured as a result of acting without the knowledge of the undisclosed facts. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek unliquidated damages in an amount to be determined by this Court which is within the jurisdictional limits of this Court.

## XII. COUNT 9 – Tortious Interference with Prospective Relations

422474.1                                Page 19

95. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

96. Plaintiffs DHC East, DHC West, and DHC Far East plead a cause of action for tortious interference with prospective relations.

97. There was a reasonable probability that Plaintiffs DHC East, DHC West, and DHC Far East would have entered into a business relationship with various customers who called for catering services.

98. Armando intentionally interfered with these relationships by usurping these catering opportunities for Armando's own business and/or for a third party business who compensated Armando for steering Fuddrucker's prospective customers to it.

99. Armando's conduct was fraudulent and a breach of his fiduciary duties to DHC East, DHC West, and DHC Far East and therefore independently tortious or unlawful.

100. Defendant's interference proximately caused injuries to DHC East, DHC West, and DHC Far East.

101. DHC East, DHC West, and DHC Far East suffered actual damages or losses in an amount to be determined by this Court and they seek unliquidated damages within the jurisdictional limits of this Court.

## XIII.  COUNT 10 – Conspiracy

102. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

103. Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty allege that the Defendants conspired to commit the above actions and are therefore jointly and severally liable for all damages to Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty.

104. The Defendants were members of a combination of two or more persons.

105. The purpose of this combination was to accomplish an unlawful purpose, as set forth above.

106. The Defendants had a meeting of the minds on the object or course of action, and each of the Defendants committed an unlawful, overt act to further the object or course of action.

107. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty suffered injury as a proximate result of the wrongful acts of the Defendants.

108. Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek actual damages from each of the Defendants, jointly and severally, in an amount to be determined by this Court.

## XIV.  COUNT 11 – Declaratory Judgment

109. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

110. David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty plead an action for declaratory judgment pursuant to 28 U.S.C. §2201, *et seq.*  David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty seek a determination of liability on the loan of money alleged by Yvette. Debtor additionally seeks a determination of the validity, extent or priority of any lien asserted by Yvette. Specifically, they seek a determination that Yvette obtained the money loaned through the embezzlement and theft set forth above and thatPlaintiffs are therefore not liable to repay stolen funds. Alternatively, if liability on the loan is established, David Chowaiki, DHC East, DHC West, DHC Far East and DHC Realty seek a determination as to which of them is liable for repayment of the loan.

## XV.  EXEMPLARY DAMAGES

111. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

112. The injuries of Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty resulted from the Defendants' actual fraud or malice, which entitles these Plaintiffs to

exemplary damages under Texas Civil Practice & Remedies Code Section 41.003. Plaintiffs Chowaiki Holdings, DHC East, DHC West, DHC Far East and DHC Realty seek the imposition of exemplary damages against each of the Defendants in the highest amount allowed by law.

## XVI.  ATTORNEYS FEES

113.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

114.   Plaintiffs are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code § 134.005 and Texas Business and Commerce Code § 24.013 and plead for the recovery of same.

## XVII.  CONDITIONS PRECEDENT

115.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

116.   All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs ask that the Court issue citation for the Defendants to appear and answer, and that Plaintiffs be awarded a judgment against Defendants, jointly and severally, for the following:

a.   The avoidance and recovery of all fraudulent transfers to the Defendants.

b.   The avoidance and recovery of all post-petition transfers to the Defendants.

c.   Actual damages.

d.   Statutory damages.

e.   Imposition of constructive trust.

f.   Exemplary damages.

g.   Declaratory Judgment.

h.   Attorneys fees.

i.      Court costs.

j.      Prejudgment and postjudgment interest at the highest rate allowed by law.

k.      Attorney fees.

l.      All other relief to which Plaintiffs are entitled.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas  79949-1770
Phone:  915-532-3911
FAX:  (915) 541-6440

By:     _____
Corey W.  Haugland
State Bar No.  09234200
Jamie T. Wall
State Bar No. 24028200
Attorneys for Plaintiffs